Good morning, Mr. Harmel. I should also thank the Spokane lawyers for traveling here from Spokane. We're glad to see you. It was a nice drive yesterday. Beautiful. There's seven issues I raised in this appeal. Issue number six, the restitution issue, the amount of restitution, does hinge on the court's decision on issue number one. And I'll address the issues in order. I think each issue really boils down to just very specific facts that the court needs to review. The tax loss issue on failure to file a tax return, that's governed by the provisions of 2T1.1C2A. And it requires the loss determination to be fixed on 20% of the gross income. And that is a presumption under the guidelines. And the notes, note one to the 2T1.1, indicates that unless there's a formula that doesn't fit, if there's a formula that fits under 2T2.1C2A, the court has to use that formula. If there's no formula that fits, then the court can make a reasonable calculation. And what happened here is the district court relied on Agent Killingsworth's calculation of tax loss. And Agent Killingsworth basically took gross income and its standard deductions, exemptions, and adjustments, and figured out the tax loss from that without considering the formula set out in Section C1A. And the way the guidelines are structured, it appears as though that was wrong. And the reason why that is wrong is because the government had information in Agent Keyes' report. Agent Keyes' report is at page 175 of the Extractive Records. And Agent Keyes' report said that the Haynes' had so many business enterprises going on that literally every expenditure could be considered a legitimate tax deduction. And so what the court had before it was two agents from the IRS, one that said you can't figure out what the loss is, one that says here's how I'm going to figure out the loss. And instead of deferring to Agent Keyes' report or to the guidelines, the court adopted Agent Killingsworth without any consideration of Agent Keyes' report. So unless the court has any questions on that issue. I think the court is aware of it. Kristen Haynes, her appeal has already been decided. And what I want to do is highlight the fact that in that appeal, Agent Keyes' report was not a significant part of the Kristen Haynes' argument. I think what's really important in this case is that Agent Keyes, whose report went to the district court, literally said there's no way of figuring out what the tax loss would be because of their variety of business ventures. Sophisticated means, is there any questions on the sophisticated means argument? Well, I guess I have the general question that it seems like they've got some overseas or offshore corporations and some money is going through that. Why shouldn't that be sufficient for sophisticated means? I think what's important is to focus on what the offense of conviction really is, and that's to fail to file tax returns. Agent Killingsworth said we were able to identify specific items of income by looking at bank records and wire transfer records. So the Haynes' weren't hiding their gross income. And gross income is what is the deciding factor in a failure to file case. So the fact that they may have had some overseas accounts or property in Honduras has nothing to do with hiding their gross income, which is what is important in a failure to file case. So that's why the sophisticated means in this case does not apply, and that's what makes it different than the Bishop case, which was cited in both my brief and in the government's brief, is Agent Killingsworth was able to trace the specific items of gross income in order to come up with her, without the Haynes' didn't conceal any of that. They were able to trace it through their bank accounts and through wire transfers from Castart and through Willop Corporation. So that's why I believe that the sophisticated means enhancement should not apply. The other issue is whether or not the district court afforded the defense counsel, trial counsel, an opportunity to speak on behalf of Mr. Haynes before the sentence was imposed. And what the government is arguing is that it's clear in the record that Ms. Haynes' attorney was doing the arguing for both counsels, so therefore her argument applies to Scott Haynes, and so the fact that Scott Haynes' lawyer didn't say anything should relieve the court of its obligation to ask Mr. Haynes' attorney to speak on his behalf. The rule doesn't allow that. Rule 32 is specific that the district court must give defense counsel an opportunity to speak on behalf of the defendant. United States v. Carter is clear that that's one of the procedural aspects of the case. Counsel, did the court at some point give the lawyer a chance to talk and he said let those other people go first? Actually what happened was when Ms. Haynes finished her allocution, Ms. Haynes' attorney said we have witnesses that are here to testify how would the court procedurally like to handle that, and Mr. Haynes' trial attorney stood up and said we'll wait to make our comments after the witnesses make their statements and sat down. Immediately after the witnesses made their statements, Mr. Haynes' attorney said, Your Honor, if you would hear from Mr. Haynes. Mr. Haynes spoke, and at no time after that did the district court ask Mr. Haynes' attorney if he had any other comments in relation to the sentence to be imposed. He didn't ask for any? He didn't ask for any, but it's the district court's obligation under CARDI and under the rule to give the opportunity for counsel to speak. The record is not clear that the district court actually gave Mr. Haynes' counsel an opportunity to speak. In fact, in one place in the record, right before Ms. Haynes was sentenced, the district court asked Ms. Haynes' counsel, Do you have anything further? He never asked Mr. Haynes' counsel that same question. Does this ever call to the attention of the district court? It was not. That he wanted an opportunity to speak? It was not. That's an awful lot like invited air. I don't know if it was invited air. I wasn't the trial counsel. No, I wasn't the trial counsel. I was appointed after. If you had been there, you would have spoken up. Yes. That is true. So, yeah, so that's the – and I think even if it's a plain error standard that we're dealing with, this is tantamount to a deprivation of the right to counsel, if you're not asking the defense lawyer to speak on behalf of his client. So I do think that it rises to a fairly significant error in the sentencing proceeding. The other issue that I think raises a fairly significant issue is the district court – well, let me start out this way. 18 U.S.C. 3553A-7 requires the court to determine the need to pay restitution in factoring in what sentence to be imposed. What the district court did here is say is literally, you didn't come forward and show that you were intending to pay restitution. You didn't pay any restitution before the sentencing, so I'm actually going to give a sentence that gives you a disincentive to pay restitution. And the court did say that. Perhaps today the sentence I impose will not have an incentive to pay restitution. So the district court is literally going contrary or ruling contrary to what the district court is required to do, and that is to fashion a sentence that takes into account the need to pay restitution. And the district court even went further in saying, I don't think you're ever going to intend to pay restitution, so I'm going to give you a sentence that perhaps gives you the disincentive to pay restitution. I do think that that falls squarely against the command of 3553-A-7. It is a procedural error. If the court is instructed to consider the need to pay restitution, the district court may well, following the structure of the statute, impose a lesser sentence. So I do believe that that error is a significant error of the sentencing hearing. And really what it does, both Haines's, but particularly Scott Haines's, they were both incarcerated pending this, and the district court was holding it against them that they either didn't make a prepayment or show some sort of good faith in making a prepayment, and they were in jail. And it's all over the record that they really had their hands tied to even be able to do anything. It was tantamount to the court imposing a sentence equal to sort of the idea of a debtor's prison. So I think that is a significant error in this case. The other issue that was raised, I'll submit on the briefing, and that issue is what the court's not factoring in the fact that this is a misdemeanor versus a felony, unless you have any questions. Also, potential Rule 32 violation. And that issue, there's a couple areas where that issue turns. Number one is Judge Quackenbush did not review the pre-sentence investigation report in this case before accepting the guilty plea. He reviewed an old pre-sentence report on a prior conviction by Mr. Haines back in 1999. So what rule says, I know he's not supposed to review the pre-sentence report in this case before there's a conviction. What rule says he can't review a pre-sentence report from a prior conviction? Rule 32 itself, Your Honor. It says the probation officer shall not disclose a pre-sentence report. It doesn't use the word the. And I believe that's significant because the Gregg case is a Supreme Court case that discusses Rule 32 violations. That case involved the court reading a report that discussed prior criminal history, not a pre-sentence report but a prior or a report that was generated from a psychological report. And the reason the court found that there was harmless error was because the court already had the information that was in the psychological report that was contained in the pre-sentence report. But I believe what Gregg really stands for is the court should not have any information relating to the defendant's prior record before. I believe that's the purpose of the statute, should not have any information relating to the prior record. I believe a close review of the Gregg case stands for that proposition. So that's why it indicated the review of a pre-sentence report is error of the clearest kind if it occurs prior to a conviction or prior to the court accepting a guilty plea. And in this case, it's unclear as to whether the pre-sentence report was being read in conjunction with comments that were made after accepting the guilty plea or whether the PSI was reviewed prior to accepting the guilty plea. But Gregg makes it really clear that the simple disclosure of a pre-sentence report is error of the clearest kind, unless you have any further questions. Thank you. Okay, thank you, counsel. Good morning. Perhaps your last name is Jacobs? No, Jacobs, Your Honor. We have a misprint there. Jacobs, I know. Good morning, Your Honors. May it please the Court, George Jacobs, not Shababs, on behalf of the United States. Your Honors, Judge Quackenbush did not clearly err when he accepted the government's calculations of the tax loss and tax due and owing in this case. That decision was based on the testimony of Revenue Agent Killingsworth, who testified at the sentencing hearing, as well as her schedules and tables. Regarding the sophisticated means issue, Your Honors, Judge Gould mentioned the transfer of monies to offshore accounts. Judge Quackenbush did not clearly err in finding sophisticated means. Were they offshore or was it Honduras, just extraterritorial? The accounts were in Honduras, Your Honor. There were two accounts in Honduras. In addition to that, there was evidence that Mr. Haynes had diverted unreported royalty income to an irrevocable pure trust known as Boss Management Trust and had also diverted unreported royalty income to pay off a personal loan at Mellon Bank. So those royalty income payments did not go into a bank account held in the name of Mr. Haynes. They were paid directly from cast art to Mellon Bank. And Judge Quackenbush in the record indicates that the conduct clearly showed sophisticated means. I'd also point out regarding the concealment issue, if Revenue Agent Killingsworth testified that she couldn't trace or determine whether $1.4 million were actually specific items of income or not, and she did not even include that in her overall calculations. Regarding the right to allocute, prior to imposing sentence, Judge Quackenbush stated, we'll take a 10-minute recess before I hear from the parties as to the sentence to be imposed. Judge Quackenbush clearly invited Mr. Haynes' attorney to allocute. It was a joint sentencing hearing. The expert called by the defense testified for both on Mr. Haynes' behalf and Mrs. Haynes' behalf. And the government's reading of the record is that Ms. Haynes' attorney made a recommendation that applied to both husband and wife. She made a recommendation of a noncustodial sentence for both defendants, five years probation. Regarding the 3553A7 issue, Your Honors, the United States believes that counsel is conflating the restitution issue with the acceptance of responsibility issue. In going through the record, Judge Quackenbush clearly had concerns about whether or not Mr. Haynes was going to qualify for acceptance of responsibility. And the record speaks at length to that. So really, the record shows that Judge Quackenbush did consider the need to pay restitution, did not uncritically accept the recommendation by the probation office, and applied that factor. Regarding the Rule 32 violation pertaining to a 10-year-old pre-sentence investigation report, the United States believes that the Gallaher decision that counsel cited is distinguishable from this case. In that case, there was a conditional guilty plea. In this case, the plea was unconditional. And therefore, Gallaher is not applicable. Well, can I ask you a question about this? As I understand it, I wanted to ask a question with respect to restitution, but are you getting to that? No, Your Honor. This would be a yes. Okay. I just wondered, the court said that it referred to the possible filing of a Rule 35 motion. Is the Rule 35 motion available in these circumstances? Well, of course it's the government's discretion to file that. And the court did speak to that, Your Honor. Judge Quackenbush indicated that if there was evidence that Mr. Haynes paid some of the tax due and owing off the $833,000, that's something that the government could consider doing. It has not done that in this case. I'm not aware. Could you do that and reduce the sentence if he paid the restitution? I don't believe so, Your Honor. I don't think so. Is there any way that the sentence could be adjusted in the event that the restitution was paid? I'm not aware of any, Your Honor, but I would bring the court's attention to this. As the court knows, looking in the guidelines, tax crimes are very serious. And in the past, prior to 1987, half the criminal tax defendants were sentenced to no incarceration and the other half were sentenced to up to 12 months or thereabouts. And so the tax loss is what drives the sentence. And this was a very high tax loss combined with a recidivist tax offender. Right. And he got 40 months? Yes. Yes, Your Honor. Can I ask you another question, please? I guess you're almost through. Yes, I am. On the tax loss. Yes. Is that the same issue that we decided in the wife's case? Yes, it is, Your Honor. Ms. Haynes raised that issue and it resulted in an unpublished opinion July 8th of 2011. Right. And they were tried together? They both pled guilty, Your Honor. I'm sorry. Yes. They both pled guilty. Yes. Is that in any way considered the law? They pled guilty in the same proceeding, I think. Yes, Your Honor, and I cited that as a related case in my case. I understand that. I'm just wondering, is that possibly the law in this case? I think it would be regarding that issue, yes, Your Honor. That issue. Yes. Are there no other questions? I'll sit down. I wanted to ask you a question about the elocution. Yes. It wasn't clear to me in your argument, are you saying that the trial judge did not err in failing to ask counsel if he wished to elocute? What I'm saying, Your Honor, is Judge Quackenbush took a ten-minute recess and then invited the parties. Before I hear from the parties, we'll take a ten-minute recess before I hear from the parties as to the sentence to be imposed. And that statement by Judge Quackenbush was an invitation for Mr. Haynes' counsel, Ms. Haynes' counsel and the government to speak before imposing sentence. What happened was, the way the procedure went, Ms. Haynes' attorney elocuted. Some witnesses were called on their behalf and they addressed the court, both on each defendant's behalf. And the United States' argument is that Mr. Benson was aware of that invitation and simply chose not to avail himself of that, given the very strong argument Ms. Haynes' attorney made for a noncustodial sentence of five years probation to both defendants. So is it your argument the court had no duty to say to him, do you wish to say anything on behalf of your client? You agreed with what the other lawyer has said. The court, my argument is the court invited the parties to speak and... And one did. That is correct. And the other did not. Yes, Your Honor. And you're saying the court had no duty to say how about you? Do you have any comments to make on behalf of your client? That is correct. My argument is the court does not need to renew that invitation. So your argument is there is no error. Yes, Your Honor. That is correct. And I have a related question on that. The court said we'll hear from the parties. I invite the parties or whatever. If a party speaks for himself or herself, does the court have a duty to ask the lawyer to speak for the party? I don't believe it does, Your Honor. What is the language of Rule 32 that bears on this, say, literally? It seems kind of technical. As I understand it here, his wife's lawyer argues, and he allocutes himself personally, right? Yes, Your Honor. But there's no inquiry to him, to his lawyer specifically. Do you want to add anything? It seems kind of technical, but I'm wondering if Rule 32 requires it. Because we do interpret it strictly in some contexts. Your Honor, I'm looking at my copy of Rule 32. It's a Subsection 4, Opportunity to Speak. Before imposing sentence, the court must provide the defendant's attorney an opportunity to speak on the defendant's behalf. And my reading of that rule is, and applying it to the record in this case, Judge Quackenbush followed that rule. He provided Mr. Haynes' attorney an opportunity to speak. And for whatever reason, well, my reading, having been at the sentencing, is it was a joint sentencing hearing, and Ms. Haynes' attorney made a very, very strong sentencing recommendation, a five years probation for both. And was it clear that it was, my understanding was that it covered both of them. Yes, that is correct, Judge. Are there any other questions? I have no other questions, Your Honor. Hearing none, I think that's it. Thank you, Your Honor. Okay. We have, I think Mr. Hormel, you had a little time for a rebuttal. Yes. On page 154 of the excerpt of record, just before Kristen Haynes was going to be sentenced, the district court asked Ms. Haynes' attorney, all right, Ms. Haynes, will you please come to the podium, please? Anything further, Ms. Moran, who is Kristen Haynes' attorney, prior to the actual imposition of the sentence, no statement was ever made by the court to Mr. Haynes' attorney. And even though Kristen Haynes' attorney was using the words, they and them, Mr. Haynes still is entitled to have his attorney speak on his behalf prior to the imposition of sentence. And not allowing it is, you know, tantamount to Not allowing it. Not giving the opportunity. Excuse me, Your Honor. Not giving the opportunity. You didn't tell him you can't talk. No, he did not. But your position is that giving him the opportunity to speak requires that the court specifically ask him if he wants to speak. Reading the record as I have since I wasn't the trial attorney, it doesn't look as though there was enough sufficient break in the activity for the trial counsel to, after his client ended up doing the allocution first. He had no opportunity to stand up and say, Your Honor, I'd like to be heard? I suppose, but there's nothing in the record that indicates that he didn't take an opportunity, that's for sure. But whether the court allowed him an opportunity as he did, Ms. Moran, on behalf of Kristen Haynes, the record's highly unclear. The other point I want to make is the law of the case issue. I'm not so sure this is a law of the case because we are here before the court, and I am presenting different facts than I believe Kristen Haynes, attorney, was submitting in support of that argument. And that specifically is at 175 of the excerpt of record, and I'm relying heavily on what Agent Keyes said in that report. Because in my mind, what he's telling the government is, there's so many business expenditures they can claim as deductions, there's no way to figure out their tax situation, and that's why the 20% of gross income formula should be used. I have 27 seconds. Are there any other questions? I have none. To say these are tough issues, I'm glad we have Spokane lawyers here to educate us. Thank you. Okay. If there's nothing further on that, that Haynes case number 10-30345 shall be submitted, and the court will take a 15-minute recess. Thank you. Thank you.
judges: Schroeder, Alarcon, Gould